UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAWN C.,[1]

       Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

DECISION & ORDER

20-CV-1918MWP

## PRELIMINARY STATEMENT

  Plaintiff Dawn C. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB").  Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.  (Docket # 11).

  Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket ## 7, 8).  For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  See *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

>   (4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his/her] past work; and
>
>   (5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   The ALJ's Decision

In her decision, the ALJ first determined the relevant period at issue. Plaintiff originally filed an application for DIB that was denied on March 2, 2017. (Tr. 10). [2] Plaintiff filed another application for DIB on April 3, 2018, alleging an onset date of May 17, 2010. (*Id.*). Because the alleged onset date preceded the date of the previous administrative denial, the ALJ interpreted the new application as an implicit request to reopen the previous application. (*Id.*). The ALJ denied that request, finding that plaintiff had failed to establish good cause to reopen the previous claim. (*Id.*). Accordingly, the ALJ concluded that the relevant period for the current application was March 3, 2017 (the day following the last denial) through March 31, 2019, plaintiff's date last insured. (Tr. 10, 12).

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

Next, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity between March 3, 2017 and March 31, 2019.[3] (Tr. 12). At step two, the ALJ concluded that plaintiff had the medically determinable impairments of demyelinating disease, right thumb radial nerve injury, and left shoulder impingement, but that these impairments were nonsevere prior to March 31, 2019. (Tr. 13-16). Having concluded that plaintiff did not suffer from any severe impairments during the relevant period, the ALJ concluded that plaintiff was not disabled. (Tr. 16).

In the alternative, the ALJ determined at step two that plaintiff had the severe impairments of demyelinating disease, right thumb radial nerve injury, and left shoulder impingement. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*). The ALJ concluded that plaintiff retained the RFC to perform light work. (Tr. 16-18). At step four, the ALJ found that prior to the date last insured, plaintiff was capable of performing her past work as an accounting clerk, telemarketing sales representative, and data clerk. (Tr. 18-19). The ALJ also proceeded to step five and concluded, based on plaintiff's age, education, work experience, and RFC, that plaintiff was not disabled pursuant to application of the Medical Vocational Guidelines (the "Grid"), specifically, Grid Rule 202.21, 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 19-20). Accordingly, the ALJ found that plaintiff was not disabled prior to her date last insured. (*Id.*).

---

[3] In reaching this conclusion, the ALJ noted conflicting evidence in the record concerning plaintiff's work activities during the relevant period. (Tr. 12). Nevertheless, the ALJ "defer[red] further findings on the claimant's actual work activities" because "a separate basis [existed] for a finding of 'not disabled' later in the sequential evaluation process." (*Id.*).

III.   **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 7-1). First, plaintiff argues that the ALJ erroneously determined that her impairments were nonsevere at step two and that this error was not harmless because she failed to consider limitations associated with these impairments in formulating the RFC. (*Id.* at 9-10). Second, plaintiff contends that the ALJ's RFC analysis is flawed because the ALJ reached that determination without a supportive medical opinion, after "set[ting] aside every opinion and com[ing] to her own conclusion as to [p]laintiff's ability to perform light work." (*Id.* at 11).

IV.   **Analysis**

Plaintiff maintains that the ALJ erred by concluding that her impairments were nonsevere – an error that was not harmless because the ALJ failed to incorporate associated limitations into the RFC. (*Id.* at 9-10). The Commissioner responds that the ALJ's determination that plaintiff's impairments were nonsevere was supported by the record and that, in any event, the ALJ alternatively considered these impairments to be severe and adequately accounted for them during the remainder of the sequential evaluation. (Docket # 8-1). Upon review, I find that remand is not warranted based on the ALJ's step-two determination.

At step two of the sequential analysis, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). It is the claimant's burden to present evidence demonstrating severity at step two. *See Briggs v. Astrue*, 2011 WL 2669476, *3 (N.D.N.Y.), *report and recommendation adopted by*, 2011 WL 2669463 (N.D.N.Y.

2011). "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (citation omitted); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimis* limitation to a claimant's physical or mental ability to do basic work activities").

Here, the ALJ recognized at step two that plaintiff's demyelinating disease, right thumb radial nerve injury, and left shoulder impingement were medically determinable impairments, but found that the conditions were not severe because they did not "significantly limit[] her ability to perform basic work activities" prior to her date last insured. (Tr. 16). In reaching this conclusion, the ALJ relied upon a consultative evaluation conducted by Michael Rosenberg, MD, and plaintiff's medical records, including treatment notes from two different neurologists, Bela Ajtai, MD, and Amir Mazhari, MD, an orthopedic surgeon, Timothy McGrath, MD, and plaintiff's primary care physician, Rosalind Sulaiman, MD. (Tr. 13-16).

Those records reflect that plaintiff was first evaluated by Ajtai in June 2015 for comprehension difficulties that she had been experiencing for several years. (Tr. 230-32). Plaintiff reported first experiencing difficulties following a surgery in 2010. (*Id.*). According to plaintiff, after the surgery she developed comprehension and language difficulties characterized by difficulties with word-finding, writing, spelling, and comprehending verbal communications, particularly over the phone. (*Id.*).

Ajtai conducted a neurological evaluation, which was essentially normal. (*Id.*). He noted that he did not observe "any example of" plaintiff's alleged comprehension or language

7

difficulties during his evaluation.  (*Id.*).  Ajtai also administered memory cognition testing, which demonstrated "4/5 delayed recall, slightly impaired category fluency and some difficulty copying a cube."  (*Id.*).  Ajtai diagnosed plaintiff with aphasia and recommended a brain MRI.  (*Id.*).  The MRI was conducted in July 2015 and demonstrated normal findings.  (Tr. 229).  Ajtai concluded that plaintiff's difficulties did not appear to have neurological etiology and recommended that she consider cognitive remedial therapy, although nothing in the record suggests that plaintiff followed through with this recommendation.  (*Id.*).

The record does not reflect any additional treatment for the relevant impairments until March 5, 2018, when plaintiff was evaluated by McGrath for complaints of right hand pain.  (Tr. 348-50).  Plaintiff reported that she had been experiencing right hand pain characterized by tingling and numbness in her thumb for the previous six years.  (*Id.*).  McGrath conducted a physical examination, which was normal except for a positive Tinel's sign at the radial sensory nerve.  (*Id.*).  He diagnosed a right thumb radial sensory nerve injury and recommended occupational therapy.  (*Id.*).  The record does not reflect that plaintiff ever followed through with the therapy referral.  (*Id.*).

In October 2018, plaintiff met with clinical neuropsychologist Tatyana Raby, PhD, for complaints of difficulties with comprehension and forgetfulness.  (Tr. 577-80).  Again, plaintiff reported that she had suffered difficulties since 2010 and had no significant changes in her cognition since that time.  (*Id.*).  According to plaintiff, despite her difficulties, she maintained her employment as an accounting administrator until 2014, when her employment was terminated due to downsizing.[4]  (*Id.*).  After her termination, she remained unemployed but published two children's books.  (*Id.*).  A mental status examination was essentially normal,

---

[4] During the administrative hearing, plaintiff testified that she believed she may have been terminated from her employment because her impairments caused her job performance to deteriorate.  (Tr. 40-41).

although she displayed a negative demeanor and struggled to think of the title of one the books she had authored. (*Id.*). She reported that she enjoyed reading, gardening, and watching television, although she sometimes found it difficult to follow the plots of television shows. (*Id.*).

Raby administered a psychometric evaluation that demonstrated normal language, memory, auditory attention, and processing speed but weaknesses in visuospatial processing and visuomotor construction. (*Id.*). In Raby's estimation, plaintiff's cognitive profile was "essentially normal, save for mild impairment in visuospatial planning and spatial perception." (*Id.*). Raby assessed that plaintiff had no "restrictions in work or [activities of daily living]." (*Id.*). She recommended better sleep hygiene, speech/language and audiology evaluations, and counseling to address stress management. (*Id.*).

The following month plaintiff was evaluated by audiologist Averill Paes, who found that plaintiff had deficits in decoding and tolerance fading memory. (Tr. 433-36). Paes assessed that plaintiff suffered from auditory processing disorder and recommended speech/language and visual processing evaluations, cognitive fitness exercises, and a neurological evaluation. (*Id.*).

Plaintiff returned for an appointment with Ajtai on January 10, 2019, following her audiological evaluation. (Tr. 381-83). Plaintiff reported that her symptoms remained unchanged and did not compromise her daily functioning in a meaningful way, although she avoided telephone conversations due to difficulties processing auditory information over the telephone. (*Id.*). A neurological examination of plaintiff was normal, and Ajtai referred plaintiff for a brain MRI to rule out any structural cerebral pathology. (*Id.*).

The MRI demonstrated "significant changes" compared to plaintiff's 2015 MRI images, including multiple hyperintense lesions. (Tr. 378-80). Ajtai suspected that plaintiff suffered from demyelinating disorder, although he assessed that "clinically she [was] doing very well" and was "essentially asymptomatic." (*Id.*). Ajtai ordered additional MRIs and referred plaintiff to the multiple sclerosis clinic. (*Id.*). According to Ajtai, although plaintiff was currently asymptomatic, additional diagnostic testing and management were warranted in order to "maintain her in an asymptomatic state." (*Id.*).

On January 28, 2019, plaintiff returned to McGrath for further evaluation of her right hand pain. (Tr. 351-53). The treatment records reflect that an EMG conducted in June 2018 was normal. (Tr. 351-53, 384). Plaintiff also complained of left shoulder pain. (Tr. 351-53). After examination, McGrath diagnosed plaintiff with a left shoulder impingement and residual pain consistent with possible right thumb radial sensory nerve injury. (*Id.*). He ordered an MRI for plaintiff's right hand and recommended ice and a home exercise program for her left shoulder. (*Id.*).

Plaintiff returned for a follow-up with McGrath on February 21, 2019. (Tr. 354-56). After reviewing her MRI, he indicated that surgical intervention was not warranted and offered to administer a cortisone injection to address plaintiff's ongoing right hand complaints. (*Id.*). Plaintiff declined the injection, and McGrath recommended that she address her ongoing symptoms with conservative interventions, including rest, activity modifications, and anti-inflammatories. (*Id.*).

On March 12, 2019, nineteen days before her date last insured, plaintiff met with neurologist Amir C. Mazhari, MD, for further consultation regarding her suspected demyelinating disease. (Tr. 373-78). During the appointment, plaintiff reported that she was

unemployed but helped her husband with landscaping "on the side." (*Id.*). Plaintiff complained of new right-sided abdominal numbness and left-sided neck and head pain. (*Id.*). Mazhari prescribed magnesium and administered occipital nerve blocks to address plaintiff's neck and head pain, prescribed Solu-Medrol injections to address plaintiff's complaints of numbness, and recommended further diagnostic testing for multiple sclerosis and multiple sclerosis mimics. (*Id.*).

    Plaintiff met with her primary care physician, Rosalind Sulaiman, MD, on March 20, 2019. (Tr. 531-33). Upon examination, plaintiff demonstrated full strength and range of motion in her upper extremities, clear speech, intact cognition, linear and goal-directed thought processes, and a normal neurological examination. (*Id.*).

    On May 6, 2019, after plaintiff's date last insured, she returned for an appointment with Mazhari. (Tr. 365-70). Plaintiff reported that her occipital pain and numbness had improved with the treatment Mazhari had prescribed. (*Id.*). Mazhari reviewed plaintiff's testing results and concluded that the results were not suggestive of multiple sclerosis. (*Id.*). He assessed that she suffered from demyelinating disease of the central nervous system and recommended that she continue to be monitored with annual brain MRIs. (*Id.*).

    In addition to her medical treatment, plaintiff also attended a consultative physical examination, which was conducted by Michael Wayne Rosenberg, MD, on May 15, 2018. (Tr. 340-43). Plaintiff complained of suffering from long-standing pain in her right hand that was exacerbated by activity. (*Id.*). Plaintiff reported she was able to care for her personal hygiene, prepare meals and care for her children daily, clean and do laundry biweekly, and shop once per week. (*Id.*). She enjoyed watching television, listening to the radio, reading, socializing, dining out, and gardening. (*Id.*). Rosenberg's physical examination was essentially

normal, demonstrating full range of motion in plaintiff's shoulders and wrists bilaterally. (*Id.*). Plaintiff had 4+/5 strength in her extremities and full hand grip strength. (*Id.*). According to Rosenberg, plaintiff's hand and finger dexterity was intact and she was able to pick up small objects, zip, button, and tie. (*Id.*). Rosenberg diagnosed that plaintiff suffered from minimal right hand pain and opined that she had no physical limitations. (*Id.*).

After reviewing the medical evidence, the ALJ determined that, although plaintiff's impairments were medically determinable, the objective evidence demonstrated that plaintiff's impairments did not significantly limit her ability to perform basic work activities prior to her date last insured.[5] (Tr. 14-16). Accordingly, the ALJ determined that plaintiff's impairments were not severe prior to her date last insured. (*Id.*).

As stated above, plaintiff argues that the ALJ's step-two severity determination was not supported by substantial evidence. (Docket # 7-1 at 9-10). The Commissioner counters that the ALJ's step-two finding was supported by substantial evidence in the record and that plaintiff failed to demonstrate that her impairments caused any significant limitations in her ability to perform basic work activity prior to her date last insured. (Docket # 8-1 at 10-18). I need not resolve this dispute because any error in an "ALJ's severity assessment with regard to a given impairment is harmless . . . 'when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process.'" *Graves v. Astrue*, 2012 WL 4754740, *9 (W.D.N.Y. 2012) (alteration in original) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 153 (N.D.N.Y. 2012)). Here, it is clear that the ALJ made an alternative step-two finding that plaintiff's impairments were severe and

---

[5] In reaching this conclusion, the ALJ acknowledged that medical records post-dating the date last insured were "perhaps more consistent" with plaintiff's allegations of disabling symptoms. (Tr. 15). Indeed, the records suggest that after the date last insured plaintiff experienced increased symptoms, including paresthesia and loss of vision.

proceeded to consider those impairments and any limitations they caused throughout the remainder of the sequential evaluation.

Plaintiff contends otherwise, maintaining that the absence of cognitive limitations in the ALJ's RFC shows that the ALJ failed to consider the cognitive limitations caused by her impairments throughout the remainder of the sequential evaluation. (Docket # 7-1 at 11 ("[the RFC] does not account for any of [p]laintiff's cognitive issues")). Although an ALJ must account for limitations caused by both severe and nonsevere impairments in formulating the RFC, *see Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order), if a mental impairment causes only mild limitations that do not result in any functional work-related restrictions, the ALJ does not err by formulating an RFC without mental limitations or restrictions. *See, e.g.*, *Grace M. v. Comm'r of Soc. Sec.*, 2022 WL 912946, *3 (W.D.N.Y. 2022) ("even though mild limitations may cause functional restrictions, such limitations do not compel the inclusion of mental limitations in the RFC[;] . . . [w]here an ALJ's assessment of only mild limitations in mental functioning [is] supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC"); *DuBois v. Comm'r of Soc. Sec.*, 2022 WL 845751, *6 (S.D.N.Y. 2022) (rejecting plaintiff's contention that "because the RFC formulated by the ALJ does not include 'any mental health restrictions,' . . . it is 'inconsistent' with his step two finding that plaintiff had 'medically determinable' (albeit non-severe) mental health impairments, including 'mild' limitations in each of the four functional areas assessed[;] . . . [i]n essence, plaintiff's argument is that once an ALJ has identified a medically determinable impairment at step two – even a *de minimis* impairment, . . . it is error if the ALJ fails to include a corresponding 'mental health restriction' in the claimant's RFC"); *Beliana M. C. v. Comm'r of Soc. Sec.*, 2022 WL 596045, *9 (D. Conn. 2022) (rejecting

proposition that "an ALJ must include a restriction in the RFC if, at step two, he finds mild limitations resulting from a nonsevere impairment[;] [r]ather, he must consider whether any functional restrictions exist because of the mild limitations, and, only if they do, incorporate those restrictions into the RFC").

Review of the medical evidence described above demonstrates that the ALJ's determination that plaintiff's impairments caused only minimal mental limitations prior to plaintiff's date last insured is well-supported by the record. Indeed, although the plaintiff complained of comprehension and language difficulties, her neurological evaluations were routinely normal, and her treating providers did not observe any objective evidence of plaintiff's complaints. The neuropsychological evaluation administered by Raby demonstrated that plaintiff's cognitive profile was "essentially normal, save for mild impairment in visuospatial planning and spatial perception." (Tr. 580). Moreover, according to the record, plaintiff's complaints of cognitive deficits were longstanding, having existed since approximately 2010. The records further reflect that plaintiff reported that her deficits did not worsen in severity throughout the relevant period; rather, they remained consistent prior to her date last insured. Yet, despite plaintiff's complained of cognitive deficits, she maintained her employment until sometime in 2014, and she later published two children's books. On this record, I conclude that the ALJ's determination not to include functional mental limitations in the RFC does necessitate remand. *See Grace M. v. Comm'r of Soc. Sec.*, 2022 WL 912946 at *4 ("this is not a case where the ALJ failed to consider plaintiff's non-severe impairments in assessing plaintiff's RFC, but rather a case where the ALJ appropriately determined that such impairments did not limit her ability to perform semi-skilled work").

With respect to her physical limitations, plaintiff argues that the ALJ's RFC assessment is unsupported by any medical opinion evidence. According to plaintiff, the ALJ's assessment of her physical limitations is flawed because the ALJ "set[] aside every opinion and [came] to her own conclusion as to [p]laintiff's ability to perform light work." (Docket # 7-1 at 11). I disagree.

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

In formulating plaintiff's physical RFC, the ALJ considered three separate opinions assessing plaintiff's physical functioning, including Rosenberg's opinion discussed above. The other opinions were authored by state reviewing consultant Gary Ehlert, MD, and plaintiff's primary care physician, Rosalind Sulaiman, MD. Ehlert reviewed plaintiff's medical records and opined that her impairments were not severe because they did not significantly limit her ability to do basic work activities. (Tr. 57-62).

Sulaiman completed an opinion regarding plaintiff's functional capabilities on January 13, 2020. (Tr. 583-88). Sulaiman indicated that plaintiff suffered from multiple sclerosis, auditory processing disorder, and right hand pain, characterized by intermittent visual impairments, muscle spasms, and weakness. (*Id.*). Sulaiman opined that plaintiff would perform work tasks approximately twenty percent more slowly than other employees due to her auditory processing disorder, and that she could only use her right hand to perform grasping, turning, twisting, or fine motor manipulations approximately two percent of the workday. (*Id.*). Sulaiman also opined that plaintiff could walk only one city block at a time without resting, and could sit for ninety minutes and stand for approximately fifteen minutes at a time before needing to rest. (*Id.*). In Sulaiman's estimation, plaintiff would need to take unscheduled thirty-minute breaks every two to four hours during the workday in order to lie down. (*Id.*). Sulaiman further opined that plaintiff would be absent more than four days per month and was incapable of performing even a low stress job. (*Id.*). According to Sulaiman, plaintiff had experienced such limitations since 2010. (*Id.*).

With respect to the opinions of Ehlert and Rosenberg, the ALJ "set aside" their opinions that plaintiff did not have any physical limitations in order to provide plaintiff "a significant degree of benefit of the doubt." (Tr. 18). Regarding Sulaiman's opinion, the ALJ concluded that it was unpersuasive, finding that it was inconsistent with the subjective and objective notations in Sulaiman's own treatment notes. (*Id.*). In giving the plaintiff the benefit of the doubt, the ALJ concluded that an RFC limiting plaintiff to full range of light work was the "the most the record could possibly support." (*Id.*).

According to the ALJ, the record demonstrated that plaintiff suffered from minimal objective physical findings prior to her date last insured. (Tr. 17-18). With respect to

plaintiff's demyelinating disease, the ALJ reasoned that although diagnostic imaging demonstrated that plaintiff suffered from this disease, the objective medical evidence demonstrated that it manifested minimal physical symptoms prior to plaintiff's date last insured. (*Id.*). Similarly, although the ALJ acknowledged that plaintiff had been diagnosed with a right thumb radial nerve injury, she noted that plaintiff declined recommended treatment for the impairment and that the objective medical evidence demonstrated no deficits in hand strength or dexterity. (*Id.*). Regarding plaintiff's left shoulder impingement, the ALJ noted that objective findings were mild and only minimal treatment was provided. (Tr. 15, 17). Finally, although plaintiff complained of neck or occipital pain just prior to her date last insured, the record demonstrated that these complaints resolved with treatment within a few months. (Tr. 18).

Plaintiff maintains that the ALJ's physical RFC is unsupported by any medical opinion evidence and is necessarily the product of the ALJ's lay opinion because the ALJ did not explicitly rely upon any of the three medical opinions she considered. Of course, "[i]rrespective of the terminology used by the ALJ, . . . the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence." *See Larson v. Comm'r of Soc. Sec.*, 2020 WL 5018331, *10 n.7 (W.D.N.Y. 2020). My review of the record reveals that the ALJ reached an RFC determination that was consistent with and incorporated the opinions of Ehlert and Rosenberg that plaintiff did not have any physical limitations, while also according plaintiff the benefit of the doubt by limiting her to light work to account for her subjective complaints. In doing so, the ALJ properly fashioned an RFC that considered the consultative opinions, but ultimately assessed greater limitations based upon plaintiff's testimony. *See*, *e.g.*, *Haggins v. Comm'r of Soc. Sec.*, 2020 WL 4390698, *5

(W.D.N.Y. 2020) ("[i]t appears that the ALJ credited [p]laintiff's testimony and assessed more generous limitations in her physical RFC finding[;] . . . [t]he fact that the ALJ afforded [p]laintiff the benefit of the doubt and included additional limitations in her physical RFC finding is not grounds for remand"); *Burt v. Comm'r of Soc. Sec.*, 2020 WL 1467265, *5 (W.D.N.Y. 2020) ("[t]he ALJ was performing her duty by using [the consultative examiner's opinion] and observations when formulating the RFC despite [the examiner's] opinion lacking explicit limitations on some exertional abilities").

On this record, I find that the ALJ properly based her RFC determination on record evidence, including the several opinions in the record, and not on her own lay interpretation of the medical evidence. I also find, for the reasons stated above, that the ALJ's RFC determination is supported by substantial evidence. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"); *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (the ALJ is "not require[d] . . . [to] mention[] every item of testimony presented to him or . . . explain[] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"). Thus, remand is not warranted on this basis.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of DBI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the

Commissioner's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 7)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
       March 1, 2023